**In re Anonymous No. 105 D.B. 88**

Disciplinary Board Docket no. 105 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KERNS, *Member,* October 13, 1995—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On or about May 3, 1994, the petitioner herein filed a petition for reinstatement. The petitioner was present and represented by [    ], Esquire. The Office of Disciplinary Counsel was represented by [    ], Esquire, Senior Disciplinary Counsel and [    ], Esquire, Assistant Disciplinary Counsel. The matter was referred to Hearing Committee [    ] consisting of [    ], Esquire, Chairman, [    ], Esquire, [    ], Esquire.

The reinstatement hearing was held on October 28, 1994, in the Office of Disciplinary Counsel, [     ].

On April 6, 1995, the Hearing Committee report was filed with the recommendation that the petition for reinstatement of [petitioner] be granted. The matter was adjudicated at a meeting of the Disciplinary Board held on June 16, 1995.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) [Petitioner], attorney identification number [     ], currently resides at [     ]. (Petition for reinstatement.)

(2) Petitioner's date of birth is March 17, 1925 and he is currently 70 years of age. (Petition for reinstatement.)

(3) Petitioner graduated from [     ] University in 1950 and [     ] Law School in 1955.

(4) Petitioner is currently married and has five children.

(5) Petitioner is currently unemployed.

(6) During his years as a practicing attorney he was an [     ] also a part-time [     ] under [     ]. He was also general counsel for the [     ] for 15 years.

(7) Petitioner was a [     ] for six years, serving three terms and was elected to represent the [     ] of [     ].

(8) Petitioner resigned from the practice of law on June 10, 1989, and was subject to an order of court dated June 28, 1989, disbarring him on consent.

(9) Petitioner was convicted of the offenses of conspiracy to commit perjury, to suborn perjury and obstruction of justice 18.371 C.T. 1, obstruction of justice 18.1503 C.T. 2, perjury 18:1621 Cts. 6, 9 and 10 by the Honorable [A] on July 13, 1988.

(10) Judgment of sentence was imposed and petitioner was placed on probation for a period of three years, that he serve 200 hours of community service during the first two years of his probation and that he be fined $250.

(11) The period of probation was served without incident and with the 200 hours of community service being performed through the manner of raising funds for [   ] a public television station.

(12) The conviction was very embarrassing and extremely difficult on petitioner's family who have been supportive throughout the entire matter.

(13) Petitioner expressed his regret and stated that it was an isolated incident.

(14) Since the time of the conviction, petitioner has had open heart surgery and a difficult recuperation having been hospitalized three or four times thereafter.

(15) His desire to return to the practice of law is great and he firmly believes that he will be a credit to the profession if reinstated.

(16) In addition to complying with the educational requirements of the Disciplinary Board through the Pennsylvania Bar Institute, much time was spent at the [   ] Library in the last several years doing research because of an estate matter in [   ].

(17) There was no financial reward or remuneration received from the episode leading up to indictment and conviction.

(18) Another attorney, [B], who was a friend of his, brought him into the conspiracy.

(19) There are currently five judgments entered against petitioner and a federal tax lien which have

no relationship whatsoever to the actions of petitioner which led up to his disbarment.

(20) Prior to his disbarment, petitioner's practice consisted of some criminal and civil work but basically was a full-time general practice of law.

(21) The petitioner acknowledged absolutely that what he had done previously was wrong and that he was remorseful for it.

(22) Since his disbarment, petitioner's work history included working for the [    ] as a consultant, a general office equipment firm and [    ]. This was during the period of 1987 through 1989 and he left this consulting business because of problems with his health.

(23) The current source of income for petitioner's family is his wife's employment as an interior decorator and social security.

(24) Because of his involvement in the criminal matter and his disbarment, petitioner became heavily in debt. He was forced to sell his home at a reduced price and took care of what he believed to be all of his debts at that time. He took this course as opposed to filing bankruptcy.

(25) The Office of Disciplinary Counsel did not oppose the reinstatement.

(26) Petitioner provided two character witnesses who testified at the hearing, [C], an attorney in [    ] and [D], Executive Director of the [    ] County Bar Association as well as various letters of recommendation.

(27) The criminal activities of which petitioner was convicted occurred over 10 years ago.

(28) Since disbarment petitioner's activities have not constituted the unauthorized practice of law.

(29) Petitioner has apologized to the Bar Association.

(30) [D], Executive Director of the [ ] County Bar Association, felt that the episode relative to [petitioner] was tragic and an aberration. That upon his observation, [petitioner] was embarrassed, contrite and wants to return to the practice of law.

## III. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so overwhelmingly egregious to preclude immediate consideration of his petition for reinstatement.

Petitioner has demonstrated, by clear and convincing evidence, that he possesses the moral qualification, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor will it be subversive to the interest of the public.

## IV. DISCUSSION

As we begin the review of any petition for reinstatement and the subsequent evidence presented on behalf of the petitioner, the board is guided by Pa.R.D.E. 218(c)(3)(i) which establishes the burden upon the petitioner as follows:

"A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth, and that the resumption of the practice of law within the

Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice, nor subversive to the public interest."

We must, of course, look to the criteria established by the Supreme Court in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The *Keller* threshold has been set forth as follows:

"When [a] reinstatement is sought by the disbarred attorney, the threshold question must be whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon 'the integrity and standing of the bar or the administration of justice nor subversive of the public interest.' " *Id.* at 579, 506 A.2d at 875.

In this case therefore, what immediately raises itself as an issue which must be explored is the fact that petitioner herein was convicted of the crime of perjury, conspiracy, subordination to perjury and obstruction of justice.

Conviction of these charges does not per se deny the reinstatement of petitioner. It is enlightening to look at the decision in *In re Anonymous No. 26 D.B. 81,* 7 D.&C.4th 260 (1990), for there the board set forth the fact that a qualitative period of rehabilitation combined with a quantitative period of time is necessary. These must be shown in order to demonstrate the extent and success of rehabilitation efforts made by the person during the period of disbarment.

In that case an attorney was disbarred when he was found to have engaged in conduct including the delivery of a bribe to a public official, giving false testimony under oath to a federal grand jury, and failing to make appropriate disclosure to a federal grand jury and law

enforcement officers and laundering checks for a public official. The crimes that that attorney was convicted of occurred approximately 12 years prior to the petition for reinstatement and the petitioner there had been disbarred seven years prior to his reinstatement. The Supreme Court allowed reinstatement with the similar set of circumstances.

We are mindful that a petitioner must admit his wrongdoing which led to his conviction and his guilt. Justice Flaherty set this forth in an opinion of the court dated August 22, 1995, *In the Matter of Robert W. Costigan,* 541 Pa. 459, 469, 664 A.2d 518, 522 (1995):

"We agree with the Maryland court that 'trust, candor and honesty' are the fulcrum on which the scales of justice rest.

"In Costigan's case if he had acted in accord with such ideals at the time of handling the estate, he would not have been disbarred, and if he had demonstrated an understanding of their importance in the present proceeding, he would likely be reinstated, for such an understanding would probably qualify him under Pa.R.D.E. 218(c)(3)(i).

"Unfortunately, we do not believe that Costigan has any greater understanding of his responsibility as an attorney for 'trust, candor and honesty,' than he did at the time of his disbarment. He finds nothing wrong with his actions in the estate matter and instead blames his clients for any wrongdoing. His failure to acknowledge his own wrongdoing disqualifies him for readmission to the bar under the terms of Pa.R.D.E. 218(c)(3)(i)."

The petitioner herein apologized to the bar, to his family and to the legal profession itself for his wrongdoing. He admitted abjectly his guilt and as shown on the letters written on his behalf for character tes-

timony as well as presented by his character witness, he is a man who has shown remorse over the years since the time of his disbarment and has sought nothing other than to redeem himself in the eyes of his profession and his family.

Over the period of time since petitioner's disbarment, he has faced serious financial difficulties but despite those, petitioner chose not to go into bankruptcy but in fact to sell his home at a substantial loss in order to pay off all of his known creditors at the time. He has continued to pay on judgments that have been entered against him and also federal tax liens despite his ill health and the difficulty that he has had to maintain his employment and has given his assurance that these debts will be paid in full. In addition, it is enlightening to note that Judge [A], despite the conviction for the types of crimes involved, saw fit to place the petitioner on probation with a very small fine and 200 hours of community service which the petitioner fulfilled through fund raising activities for his local public service television station in the [    ] area.

During the period of time of his disbarment, petitioner acted as a consultant and continuously sought employment during periods in which his health did not cause him a problem. In addition, he has done extensive research over a two or three year period at the [    ] Library on various legal matters concerning an estate of petitioner's relative in [    ]. He has concluded the necessary courses for Pennsylvania Bar Institute certification of his qualification pursuant to Disciplinary Rules for Reinstatement.

Petitioner has displayed evidence of those ingredients which show the qualitative rehabilitation as well as the quantitative period of time which fulfill the requirements of the *Keller* criteria. In addition, petitioner

has shown through reputation testimony and character letters that his expression of remorse is well known through the [   ] County Bar Association as well as through his friends and acquaintances who feel that he will not be a detriment to the bar if he was returned and also that this was truly an aberration and not a pattern of conduct that would continue into the future.

This matter concerns a petitioner who is over 70 years of age and an experienced 30 years of practice at the bar. Those years of practice and experience showed that he was capable, had integrity and provided public service to his community as well as capable legal service to his clients. His actions since the time of his disbarment have shown that he meets the requirements of Pennsylvania Disciplinary Rules for Reinstatement and his admission of guilt and remorsefulness along with his fulfilling the dictates of the *Keller* threshold, clearly set forth that his petition for reinstatement should be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, [   ], be reinstated to the practice of law. The board further recommends that pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Leonard, Lieber, Paris and Miller did not participate in the June 16, 1995 adjudication.

## ORDER

And now, November 13, 1995, upon consideration of the report and recommendations of the Disciplinary

Board of the Supreme Court of Pennsylvania dated October 13, 1995, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Montemuro participates by designation as a senior judge as provided by Pa.R.J.A. no. 701(f).